**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CITGO PETROLEUM CORPORATION, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | Case No. 4:21-cv-02086 |
| TEKNIK TRADING, INC., § | |
| § | |
| Defendant. § | |

**DEFENDANT TEKNIK TRADING, LLC'S ORIGINAL ANSWER,
AFFIRMATIVE DEFENSES[1] AND COUNTERCLAIMS**

Defendant Teknik Trading, LLC ("Teknik"), by and through its undersigned counsel, hereby files its answer and affirmative defenses to the Complaint and Request for Injunctive Relief (the "Complaint") [Dkt. 1] filed herein by Citgo Petroleum Corporation ("CITGO") ("Teknik" and "CITGO" together are the "Parties") and states the following:

**INTRODUCTION**

1.      Teknik admits that CITGO seeks a declaration and reserves the right to seek emergency relief. Teknik denies that CITGO is entitled to any relief and denies the remaining the allegations in paragraph 1.

2.      Teknik admits that it first entered into the Commercial Agreement dated May 5, 2010 (attached to the Complaint as Exhibit A[2]) with CITGO on May 5, 2010. Teknik

---

[1]. Teknik denies each and every allegation, matter, statement, and thing alleged in CITGO's Complaint except as may be hereinafter admitted, qualified, or otherwise explained.

[2]. Exhibit A to the Complaint contains the Commercial Agreement dated May 5, 2010, the Amendment to Commercial Agreement dated April 8, 2013, the Change Order Form dated June 1, 2017, the Change Order Form dated August 3, 2017, the Change Order Form dated November 30, 2017, and the Amendment to Commercial Agreement dated January 2, 2019 (collectively, the "Agreements").

1

states that the Commercial Agreement dated May 5, 2010 speaks for itself and is the best evidence as to its terms, meaning and requirements. Teknik also admits that CITGO purchased millions of dollars worth of the goods at issue. Teknik is without sufficient knowledge or information to determine the accuracy of the allegations regarding what CITGO relied on, and therefore denies same and demands strict proof. Teknik denies the remaining allegation in paragraph 2 and footnote 1.

3.      Teknik states that the Agreements speaks for themselves and are the best evidence as to their terms, meaning and requirements. Teknik admits that it provided assurances that it would substantiate requests for payment from CITGO with appropriate documentation; comply with both the terms of the Agreements and the law; waive any lien-right Teknik might otherwise have to dispose of the goods; and permit CITGO a right to audit to ensure compliance with these terms and applicable laws, to the extent these assurances are set forth in the Agreements. Teknik denies any remaining allegations in paragraph 3.

4.      Teknik admits that this dispute involves the goods subject to the Agreements, which were paid for by CITGO, procured by Teknik, and destined for delivery to PdVSA. Teknik also admits that, on January 28, 2019, the U.S. Office of Foreign Assets Control ("OFAC") added PdVSA to its List of Specifically Designated Nationals and Blocked Persons ("SDN") under Executive Order 13850, thereby freezing the goods in Teknik's possession before reaching PdVSA. Teknik is without sufficient knowledge or information to determine the accuracy of any remaining allegations in paragraph 4, and therefore denies same and demands strict proof.

5.      Teknik states that Executive Order 13850 speaks for itself and is the best evidence as to what it requires. Teknik further states that the Agreements speaks for themselves and are the best evidence as to their terms, meaning and requirements. Teknik admits that CITGO directed Teknik to cancel any pending purchase orders, and that it stored the goods in facilities located in Miami and Houston. Teknik denies any remaining allegations in paragraph 5.

6.      Teknik states that the allegations in paragraph 6 are self-serving, conclusory, and contain unsubstantiated hearsay lacking any relevance to the instant matter. Clover Internacional, LLC is not a named party in this proceeding, nor is it a signatory to any of the Agreements in this case. Thus, paragraph 6 is impertinent and should be stricken from the Complaint under Rule 12(f). To the extent a response it required, Teknik denies that there is any corruption by Teknik or an affiliate of Teknik; and Teknik is without sufficient knowledge or information to determine the accuracy of any remaining allegations in paragraph 6 (which concern what CITGO claims to have learned and was trying to do), and therefore denies same and demands strict proof.

7.      Teknik admits that the parties dispute the amounts CITGO owes Teknik, and that OFAC allows Teknik to receive payment from CITGO. Teknik admits that CITGO has requested an audit and an inspection of the goods, and states that it has complied with CITGO's request to audit its records to confirm compliance with the Agreements, and has permitted a commercially reasonable physical inspection of the goods. Teknik denies the remaining allegations in paragraph 7.

8.      Teknik denies the allegations in paragraph 8.

9.     Teknik further states that the Agreements speaks for themselves and are the best evidence as to their terms, meaning and requirements. Teknik admits that it has advised CITGO that it intends to auction the goods if CITGO does not comply with certain obligations regarding the goods, including covering storage expenses. Teknik admits that CITGO offered to take storage of the goods while failing to agree to provide any form of adequate security as a substitute for the goods. Teknik denies the remaining allegations in paragraph 9.

10.     Teknik admits that CITGO purports to demand relief stated in paragraph 10, but denies that CITGO is entitled to any relief, including the relief sought

11.     Teknik admits that CITGO purports to demand relief stated in paragraph 11, but denies that CITGO is entitled to any relief and denies that such relief is needed to preserve the status quo sought.

## PARTIES

12.     Admitted upon information and belief.

13.     Teknik states that it converted to a Florida Limited Liability Company in August 2011, and changed its name from Teknik Trading Inc. to Teknik Trading, LLC. Teknik admits to the remaining allegations in paragraph 13.

## JURISDICTION AND VENUE

14.     Admitted for purposes of subject matter jurisdiction.

15.     Admitted for purposes of personal jurisdiction.

16.     Admitted for purposes of venue.

**STATEMENT OF FACTS**

**I.     CITGO Contracts with Teknik to Procure, Deliver, and Store Goods for PdVSA**

17.     Teknik admits upon information and belief that CITGO is a United States-based refiner, transporter, and marketer of transportation fuels, lubricants, petrochemicals, and other industrial products. Teknik is without sufficient knowledge or information to form a belief as to the remaining allegation in paragraph 17, and therefore denies same and demands strict proof.

18.     Teknik admits that on May 5, 2010, Parties entered into the Commercial Agreement, and Teknik states that the Commercial Agreement dated May 5, 2010 speaks for itself and is the best evidence as to what it requires. Teknik is without sufficient knowledge or information to form a belief as to the remaining allegation in paragraph 18, and therefore denies same and demands strict proof.

19.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. As to the allegation in footnote 2, Teknik admits that CITGO paid for the goods procured under the Agreements. Teknik denies any remaining allegations in paragraph 19.

20.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 20.

21.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 21.

22.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 22.

23.     Teknik further states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 23.

24.     Teknik further states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 24.

## II.     Goods are Stranded Amidst Legal Troubles for PdVSA and Teknik's Affiliate

25.     Teknik admits that on January 28, 2019 OFAC added PdVSA to its List of SDN. Teknik further states that the article referenced in footnote 3 titled Executive Order 13850 and *Specially Designated Nationals And Blocked Persons List (SDN) Human Readable Lists* are the best evidence as to what they require and prohibit. Teknik denies any remaining allegations in paragraph 25.

26.     Teknik admits that it was in possession of the goods at issue when PdVSA was added to OFAC's List of SDN. Teknik is without sufficient knowledge or information to determine the accuracy of the allegations regarding the value of the goods, and therefore denies same and demands strict proof. Teknik admits that Teknik had title to the goods. Teknik states that the Agreements speak for themselves and are the best evidence as to who owned the goods under the Agreements. Teknik denies any remaining allegations in paragraph 26.

27.     Teknik states that the allegations in paragraph 27, including the article referenced in footnote 4 titled *Business Executive Pleads Guilty to Foreign Bribery Charge in Connection With Venezuelan Bribery Scheme*, are self-serving, conclusory, and contain unsubstantiated hearsay lacking any relevance to the instant matter. Clover Internacional, LLC is not a named party in this proceeding, nor is it a signatory to any of the Agreements in this case. Thus, paragraph 6 is impertinent and should be stricken from the Complaint under Rule 12(f). To the extent a response it required, Teknik admits that Luis Alonso Rincon and Holly Ana Rincon of Teknik—signatories to the Agreement with CITGO—are current or former officers and/or beneficial owners of Clover, and that, in April of 2018, Juan Castillo Rincon, a former senior manager of Clover, was indicted for a criminal charge. Teknik denies that there is any corruption by Teknik or an affiliate of Teknik; and Teknik is without sufficient knowledge or information to determine the accuracy of any remaining allegations in paragraph 27, and therefore denies same and demands strict proof.

28.     Teknik states that Executive Order 13850 speaks for itself and is the best evidence as to what it requires. Teknik admits that CITGO directed Teknik to cancel any pending purchase orders, and that it stored the goods in facilities located in Miami and Houston. Teknik is without sufficient knowledge or information to determine the accuracy of any remaining allegations in paragraph 28, and therefore denies same and demands strict proof.

**III.    Teknik Demands Payment for Obtaining and Storing the Stranded Goods While Resisting an Inspection of the Goods, in Violation of Its Contract with CITGO**

29.     Teknik states that Section 1(b) of Executive Order 13850 speaks for itself and is the best evidence as to what it requires. Teknik admits that Teknik and CITGO had communications in March 2019 regarding the subject matter of paragraph 29, and states that such communications are in the e-mail chain attached as Exhibit B to Teknik's Counterclaims hereto. Teknik states that Exhibit B speaks for itself and is the best evidence as to the communications between CITGO and Teknik in March 2019. Teknik denies the remaining allegations in paragraph 29.

30.     Teknik admits that on February 18, 2021, OFAC issued licensing. Teknik states that the license issued by OFAC on February 18, 2021 is the best evidence as to what it requires. Teknik denies the remaining allegation in paragraph 30.

31.     Admitted.

32.     Teknik is without sufficient knowledge or information to determine the accuracy of any remaining allegations in paragraph 32 regarding what CITGO believes and harbors, and therefore denies same and demands strict proof. Teknik denies the remaining allegations in paragraph 32.

33.     Teknik states that the allegations in paragraph 33 are self-serving, conclusory, and contain unsubstantiated hearsay lacking any relevance to the instant matter. Clover Internacional, LLC is not a named party in this proceeding, nor is it a signatory to any of the Agreements in this case. Thus, paragraph 33 is impertinent and should be stricken from the Complaint under Rule 12(f). To the extent a response is required, Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik is without sufficient knowledge or information to determine

the accuracy of the allegations in paragraph 33 regarding what CITGO believes and has concerns about, and therefore denies same and demands strict proof. Teknik denies the remaining allegations and legal conclusion in paragraph 33.

34.    Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies the remaining allegations in paragraph 34.

35.    Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies the remaining allegations in paragraph 35.

36.    Teknik states that any e-mail communications between the parties on March 29, 2021 speak for themselves and are the best evidence as to what was stated by the parties on that day. Teknik denies the remaining allegations in paragraph 36.

37.    Teknik admits that is provided documentation to CITGO, and states that this documentation speak for itself and is the best evidence as to what it contains. Teknik denies the allegations in paragraph 37. Teknik further denies the allegation in footnote 6.

38.    Teknik denies the allegations in paragraph 38.

39.    Teknik admits that CITGO has requested an audit and an inspection of the goods, and states that it has complied with CITGO's request to audit its records to confirm compliance with the Agreements, and has permitted a commercially reasonable physical inspection of the goods. Teknik denies the remaining allegations in paragraph 39.

40.    Teknik states that it has complied with CITGO's request to audit its records to confirm compliance with the Agreements. Teknik further states that it has offered

CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods. Teknik denies the remaining allegations in paragraph 40.

41.     Teknik admits that, on March 29, 2021, counsel for Teknik sent an e-mail to CITGO and states that the e-mail speaks for itself and is the best evidence as to its terms. Teknik admits that it requested that CITGO's inspection vendor have its inspectors sign reasonable agreed upon releases. CITGO and its inspection vendor agreed to this, but that was not enough. Teknik admits that it requested that the inspection vendor add Teknik and Clover as additional insureds on its general commercial liability policy, gave CITGO commercially reasonable options for how the inspection would take place, requested up-front payments for the reasonable costs that Teknik would incur with the inspections, and requested that CITGO agree to certain hold harmless provisions.  Teknik states that its e-mail communications with CITGO (including the referenced June 15, 2021 e-mail) are the best evidence as to what was specifically stated in these regards.  Teknik denies the remaining allegations in paragraph 41. Teknik further states that it has gone above and beyond to cooperate with CITGO's request for an inspection of the goods by taking the following actions: (1) Teknik cancelled the auction set for June 29, 2021 so Parties could schedule a no-cost walk-through inspection of the goods at the Houston facility; (2) Teknik offered CITGO two different quotes based on the estimated cost to conduct a broad or narrow physical inspection of the goods; (3) Teknik invited CITGO to obtain competitive bids from third parties for the same work in case CITGO was concerned about any price disparity; (4) Teknik permitted CITGO to conduct no-cost walk-through inspections of the goods at the Houston facility and the Miami facility on July 6, 2021 and July 27, 2021,

respectively; and (5) Teknik agreed to halt the auction process through August 24, 2021 so CITGO could obtain competitive bids from third parties in order to conduct a broad physical inspection of the goods. Tcknik denies the remaining allegations in paragraph 41.

42.     Teknik denies the allegations and legal conclusion in paragraph 42.

43.     Teknik denies the allegations in paragraph 43. Further, Teknik admits that it rejected CITGO's offer to take possession of the goods because CITGO has never offered any form of adequate security as a substitute for the goods.

44.     Teknik denies the allegation and legal conclusion in paragraph 44.

## IV.   Teknik Intends to Auction the Goods Without an Inspection, In Violation of CITGO's Rights Under the Agreement

45.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik admits that auctioning the goods to help cover the storage and handling costs was discussed, and that Teknik received consent from CITGO to auction the goods in an e-mail from Daniel Beuses, the General Manager of Procurement for CITGO, on March 27, 2019. Teknik denies the remaining allegations in paragraph 45.

46.      Teknik admits that CITGO has requested an audit and an inspection of the goods. Teknik stated that e-mail communications between the parties speak for themselves and are the best evidence of CITGO's requests and how many requests were made.  Teknik states that it has complied with CITGO's request to audit its records to confirm compliance with the Agreements, has offered a commercially reasonable physical inspection of the goods, and  allowed CITGO to conduct no-cost walk-through inspections of the goods at

the Houston facility and Miami facility on July 6, 2021 and July 27, 2021, respectively. Teknik denies the remaining allegations in paragraph 46.

47.     Teknik denies the allegation in paragraph 47.

48.     Teknik admits square footage and the location of the goods are considered in determining Teknik's storage and handling fees. Teknik denies the remaining allegations in paragraph 48.

49.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 49.

50.     Teknik admits that Teknik claims that CITGO owes Teknik over $5 million in unpaid amounts due under the Agreements. Teknik denies the remaining allegations in paragraph 50.

51.     Teknik denies the allegations in paragraph 51.

52.     Teknik admits the allegations in paragraph 52.

53.     Teknik denies the allegation and legal conclusion in paragraph 53.

54.     Teknik denies the allegation in paragraph 54. Teknik states that it offered CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods. Teknik also states it allowed CITGO to conduct no-cost walk-through inspections of the goods at the Houston facility and Miami facility on July 6, 2021 and July 27, 2021, respectively.

**V.     CITGO Will Be Irreparably Harmed if The Auction Occurs Before An Inspection**

55.     Teknik admits that CITGO reserves the right to seek emergency relief and an order to be determined by the Court, but denies that CITGO is entitled to any relief. Teknik denies the remaining allegations in paragraph 55.

56.     Teknik denies the allegations and legal conclusion in paragraph 56, including the allegations stated in subparts (a) through (e). Teknik states that it has complied with CITGO's request to audit its records to confirm compliance with the Agreements. Teknik further states that it has offered CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods. Teknik also states that it received consent from CITGO to auction the goods in an e-mail from Daniel Beuses, the General Manager of Procurement for CITGO, on March 27, 2019. Teknik further denies the allegation in footnote 7.

57.     Teknik denies the allegations in paragraph 57.

58.     Teknik denies the allegations in paragraph 58.

59.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 59.

60.     Teknik denies the allegation in paragraph 60.

61.     Teknik denies the allegations in paragraph 61.

62.     Teknik states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik admits that CITGO has offered to take over storing the goods at its expense but without providing security as a substitute for the goods, and Teknik could not accept the offer because it was not commercially reasonable without security. Teknik denies the allegations in paragraph 62.

63.    Teknik admits that the public has an interest in the gathering of evidence relevant to the claims in a judicial proceeding. Teknik denies that the relief sought by CITGO is needed to prevent any critical evidence from being beyond the reach of the Court in this case. Teknik denies the allegations in paragraph 63.

64.    Teknik admits that if the goods are sold to third party buyers at an auction, they will then be owed by such buyers. Teknik is without knowledge or information to determine the accuracy of the allegations regarding the location of potential buyers and whether they will physically possess the goods. Teknik states that CITGO has had ample opportunity to appraise the goods. Teknik offered CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods, and allowed CITGO to conduct no-cost walk-through inspections of the goods at the Houston facility and Miami facility on July 6, 2021 and July 27, 2021, respectively.   Teknik denies the remaining allegations in paragraph 64.

65.    Teknik is without knowledge or information to determine the accuracy of the allegations regarding what CITGO is willing to do. Teknik states that it offered CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods, and allowed CITGO to conduct no-cost walk-through inspections of the goods at the Houston facility and Miami facility on July 6, 2021 and July 27, 2021, respectively. Teknik also admits that CITGO's offer to take storage of the goods was unreasonable because CITGO has never offered any form of adequate security as a substitute for the goods. Teknik denies any remaining allegations in paragraph 65.

## CLAIMS FOR RELIEF: DECLARATORY AND INJUNCTIVE RELIEF

## COUNT I: DECLARATORY JUDGMENT

66.     Answering paragraph 66, Teknik incorporates repeats and realleges its answers to paragraphs 1 through 65 as though fully stated herein.

67.     Teknik denies the allegation in paragraph 67.

68.     Teknik states that 28 U.S.C. § 2201(a) speaks for itself and is the best evidence as to what it requires.

69.     Teknik admits that CITGO purports to demand declarations from the Court, but denies that CITGO is entitled to any relief.  Teknik further states that the Agreements speak for themselves and are the best evidence as to what they require. Teknik denies any remaining allegations in paragraph 69.

## COUNT II: DECLARATORY AND INJUNCTIVE RELIEF

70.     Answering paragraph 70, Teknik incorporates repeats and realleges its answers to paragraphs 1 through 69 as though fully stated herein.

71.     Teknik states that CITGO owes payment to Teknik based on its performance under the Agreements, and admits that CITGO claims there is an issue as to whether CITGO owes the amount claimed by Teknik, or some lower amount. Teknik denies the remaining allegations in paragraph 71 to the extent a response is required.

72.     Teknik admits that CITGO purports to demand a declaration to be determined by the Court, but denies that CITGO is entitled to any relief. Teknik further states that 28 U.S.C. § 2201(a) speaks for itself and is the best evidence as to what it requires. Teknik denies any remaining allegations in paragraph 72.

73.     Teknik admits that CITGO purports to demand a temporary restraining order to be determined by the Court, but denies that CITGO is entitled to any relief. Teknik denies any remaining allegations in paragraph 73 to the extent a response is required, including subparts (1) and (2).

74.     Teknik admits that CITGO purports to demand an order to be determined by the Court, but denies that CITGO is entitled to any relief. Teknik denies any remaining allegations in paragraph 74 to the extent a response is required, including subparts (1) and (2).

## COUNT III: BREACH OF CONTRACT

75.     Answering paragraph 75, Teknik incorporates repeats and realleges its answers to paragraphs 1 through 74 as though fully stated herein.

76.     Teknik admits the Agreements are valid contracts. Teknik further states that Section 17 of the Commercial Agreement speaks for itself and is the best evidence as to what it requires. Teknik denies the remaining allegations and legal conclusion in paragraph 76.

77.     Teknik admits that CITGO purports to demand injunctive relief to be determined by the Court, but denies that CITGO is entitled to any relief. Teknik denies any remaining allegations in paragraph 77, including subparts (1) and (2).

Answering the Wherefore clause, Teknik admits that CITGO purports to demand a judgment against Teknik for declaratory relief, injunctive relief, costs and attorneys' fees, and other relief determined by this Court, but denies that CITGO is entitled to any relief.

## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Teknik asserts the following defenses to the causes of action asserted in the Complaint, undertaking to prove only those defenses on which it bears the burden of proof under the applicable law:

### First Affirmative Defense – Fraud and Fraud in the Inducement

78.     CITGO's claims are barred under the principles of fraud and fraud in the inducement. CITGO represented that it would pay for the handling and storage fees associated with the goods if Teknik first obtained a license from OFAC.

79.     In Texas, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Wilmot v. Bouknight*, 466 S.W.3d 219 (Tex. App. 2015).

80.     On March 27, 2019, Daniel Beuses, the General Manager of Procurement for CITGO, made material misrepresentations he knew were false when he sent Teknik an e-mail, stating that

> Should you wish to transact in the Property moving forward, ***including any attempts to liquidate the property to pay handling or storage fees***, Section 1(b) of Executive Order 13850 requires that OFAC issue a general or specific license authorizing the specific transaction before the transaction occurs. ***CITGO would fully support a request by Teknik to OFAC to issue a license permitting the liquidation of the Property in order to cover Teknik's handling or storage fees***. We are prepared to

cooperate with you in good faith efforts to seek such relief from OFAC,
to the extent the requested relief complies with our existing agreements.

(emphasis added).

The above statements are false and CITGO knew they were false. In actuality, CITGO knew it would not cover Teknik's handling or storage fees, and would oppose any liquidation of the goods to cover Teknik's handling or storage fees. On February 18, 2021, in reliance on Mr. Beuses above statements, Teknik obtained a license from OFAC authorizing it to collect all of its outstanding storage fees from CITGO. The license authorizes collection of specifically $2,056,261.95 that had accrued up until the date Teknik requested the license, and then an additional $70,103.07 per month for each month since that date. The license also indicates that Teknik is able to dispose of the goods to end its liabilities.

81.     Since receiving this license, CITGO has made every effort to avoid paying Teknik what it is rightfully owed, despite Teknik's repeated good faith attempts to cooperate with CITGO. CITGO has also worked to prevent Teknik from auctioning off the goods, despite previously providing its consent to do so in an e-mail from CITGO dated March 27, 2019. Therefore, CITGO knew its misrepresentations were false at the time they were made, and intended that Teknik rely upon those statements so that Teknik would attempt to obtain a license from OFAC.

82.     CITGO's misrepresentations induced Teknik (i) to spend capital expenditures and resources to obtain an OFAC license; (ii) to defer and/or lose other business opportunities in the industry, thereby materially affecting Teknik's position in the

overall market; and (iii) necessarily incur legal fees, costs, and other expenses in connection with requesting OFAC's cooperation and obtaining the OFAC license. The reality is that CITGO never intended to deliver on its written assurances, and knew this when it made the assurances. Thus, CITGO is not entitled to any recovery against Teknik under the Complaint, as it both defrauded Teknik as to its capabilities and willingness to do business, and fraudulently induced Teknik into applying for an OFAC license knowing full-well that it had no intent, desire or capability of performing its stated responsibilities and obligations once Teknik obtained a license. Teknik hereby refers to and incorporate the allegations in the Counterclaim below regarding the subject matter of the allegations in this defense.

### Second Affirmative Defense – Breach of Contract by CITGO

83.     CITGO cannot seek damages against Teknik, as it was CITGO's breach of the Agreements that precipitated Teknik's alleged breach. Indeed, it is axiomatic that the "first breach" or "prior breach" doctrine applies in this case. Simply stated, it is as follows: "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co*., 134 S.W.3d 195, 196 (Tex. 2004) *citing Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692, 37 Tex. Sup. Ct. J. 731 (Tex. 1994).

84.     Further, in Texas, the elements of a breach of contract claim are: (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from

that breach. *Adams v. H & H Meat Prods.*, 41 S.W.3d 762, 771 (Tex. App. 2001); *Petras v. Criswell*, 248 S.W.3d 471 (Tex. App. 2008). A breach of contract claim accrues when the contract is breached. *Santander Consumer USA, Inc. v. Palisades Collection, LLC*, 447 S.W.3d 902, 906 (Tex. App. 2014).

85.     Here, Teknik provided CITGO with the documents and materials necessary to substantiate Teknik's costs associated with the goods. However, since Teknik obtained its OFAC license in February 2021, CITGO has manufactured issues at every turn in order to avoid making payment under the Agreements. Thus, CITGO has breached its obligation to "reimburse Teknik within 5 business days after Teknik provides CITGO with supporting documentation." See <u>Exhibit A</u> at p. 3 ¶ 5. CITGO's failure to honor Teknik's demand for payment has required that Teknik stop the bleeding of storage costs and explore the possibility of auctioning the goods in its possession. Of course, Teknik only intends to do this as a measure of last resort, and has already agreed to multiple extended stays of the auction process so that CITGO can perform no-cost walk-through inspections of the goods in facilities located in Miami and Houston, and obtain competitive bids from third parties in order to conduct a broad physical inspection of the goods. Thus, CITGO's failure to tender performance under the Agreements constitutes its "first" or "prior" breach of the Agreements, thereby discharging Teknik's contractual liability. Teknik hereby refers to and incorporate the allegations in the Counterclaim below regarding the subject matter of the allegations in this defense.

## Third Affirmative Defense – Estoppel

86.      CITGO's claims are barred under the principles estoppel. Under Texas law, "The rule of law as to estoppel *in pais* is clear, that when one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." *Love v. Barber*, 17 Tex. 312, 317 (1856). The elements of equitable estoppel are (1) a false representation or concealment of material facts (2) made with the knowledge, actual or constructive, of those facts (3) to a party without knowledge, or the means of knowledge, of those facts (4) with the intention that it should be acted on, and (5) the party to whom it was made relied or acted on it to his prejudice. *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 334 (Tex. App. 2011).

87.      On March 27, 2019, Daniel Beuses, the General Manager of Procurement for CITGO, sent an e-mail message to Teknik indicating that CITGO would pay for or cover (including through liquidation of the Property) the handling and storage fees associated with the goods if Teknik first obtained a license from OFAC. This communicated to Teknik that CITGO was agreeing to be responsible to such expenses and would not require Teknik to pay for storage and handling without reimbursement. Once Teknik obtained this license, CITGO changed its position and began making every effort to avoid paying Teknik what it is rightfully owed. Teknik relied on CITGO's representation that it would honor the Agreements if Teknik obtained an OFAC license. Teknik relied on CITGO's misrepresentations to its detriment and has been injured in that Teknik has been forced (i)

to spend capital expenditures and resources to obtain an OFAC license; (ii) to defer and/or lose other business opportunities in the industry, thereby materially affecting Teknik's position in the overall market; and (iii) necessarily incur legal fees, costs, and other expenses in connection with requesting OFAC's cooperation and obtaining the OFAC license. Thus, CITGO's conduct and acquiescence amounts to estoppel herein. Teknik hereby refers to and incorporate the allegations in the Counterclaim below regarding the subject matter of the allegations in this defense.

## **Fourth Affirmative Defense – Frustration of Purpose**

88.     CITGO's claim that Teknik failed to properly store the goods and therefore reduced their value is barred under the principles of frustration of purpose. Under this theory—also described as "impossibility of performance" or "commercial impracticability"—"an obligor may be excused from performing a contract if an event occurs and the contract was made on the basic assumption that the event would not occur." *See* Restatement (Second) of Contracts § 261; *Philips v. McNease*, 467 S.W.3d 688, 695-96 (Tex. App. 2015). This defense generally applies in three instances: "(1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, and (3) prevention by governmental regulation. The third allows courts to read into a contract an escape clause that does not otherwise exist." *Key Energy Servs. v. Eustace*, 290 S.W.3d 332 (Tex. App. 2009).

89.     Under the Agreements, CITGO purchased millions of dollars' worth of goods, and Teknik performed various logistics services to deliver the goods to PdVSA at specified delivery points. Exhibit A at p. 2 ¶ 1. In early 2019, however, OFAC added

PdVSA to its List of Specifically Designated Nationals and Blocked Persons List pursuant to Executive Order 13850, thereby indefinitely freezing the goods in Teknik's possession. This meant the goods could not be transported without the risk of Teknik violating Executive Order 13850. Since then, Teknik has been forced to act as a warehouse facility despite never having the ability or capacity to hold the goods indefinitely. CITGO knew and understood that the purpose of the Agreements was to have Teknik deliver goods to PdVSA, and not store them indefinitely. Teknik's original purpose under the Agreements has been frustrated by the actions of the U.S. government. Obviously, this frustration was not the doing of Teknik and was not foreseeable. Thus, CITGO's allegation that Teknik failed to properly store the goods is barred by the doctrine of frustration of purpose.

### Fifth Affirmative Defense – Express Waiver of Liability

90.     CITGO's claims are barred under the Agreements' waiver of liability provision. The Amendment to Commercial Agreement dated April 8, 2013, Section 4(c), provides that "[i]n the event that either party breaches any provision of this Agreement or Addendum related thereto, the breaching party agrees to . . . hold harmless the other party from . . . any cost incurred by the non-breaching party". If Teknik is liable to CITGO, which it is not, it is held harmless due to CITGO's failure to reimburse Teknik within five business days after Teknik provided CITGO with supporting documentation for expenses, as required under the Agreements. Thus, Teknik is to be held harmless against CITGO's claims per the terms of the Agreements themselves.

## Sixth Affirmative Defense – Implied Waiver

91.     CITGO waived its right, if any, to assert any of its claims against Teknik by engaging in conduct demonstrating the voluntary relinquishment of its alleged rights, or, alternatively, warranting an inference of such voluntary relinquishment. Among other things, on March 27, 2019, Daniel Beuses, the General Manager of Procurement for CITGO, sent an e-mail message to Teknik indicating that CITGO would pay for or cover (including through liquidation of the Property) the handling and storage fees associated with the goods if Teknik first obtained a license from OFAC. This communicated to Teknik that CITGO was voluntarily relinquishing any right to require Teknik to pay for storage and handling without reimbursement. Teknik inferred such relinquishment and waiver, and, in reliance, obtained this license and incurred the fees. Teknik hereby refers to and incorporate the allegations in the Counterclaim below regarding the subject matter of the allegations in this defense.

## COUNTERCLAIMS

Defendant Teknik Trading LLC ("Teknik"), hereinafter the Counter-Plaintiff, by and through its undersigned counsel, hereby files its asserted counterclaims against Plaintiff Citgo Petroleum Corporation ("CITGO"), the Counter-Defendant herein ("Teknik" and "CITGO" together are the "Parties").

## INTRODUCTION

92.     This case is about a company trying to get something for nothing. In May 2010, CITGO and Teknik entered into an agreement where CITGO purchased millions of

dollars' worth of goods, and Teknik performed various logistics services to deliver the goods to PdVSA at specified delivery points.

93.     In early 2019, however, the U.S. Office of Foreign Assets Control ("OFAC") added PdVSA to its List of Specifically Designated Nationals and Blocked Persons pursuant to Executive Order 13850, thereby freezing the goods in Teknik's possession and preventing their transport without risk of sanctions.

94.     Subsequently, in October 2019, in reliance on representations made by CITGO, assuring that it would pay for Teknik's services and cover storage expenses, or support liquidation of the goods to cover the expenses, Teknik applied for a license from OFAC to move the goods and collect accounts receivable from CITGO for services rendered, which was finally approved in February 2021. However, unbeknownst to Teknik, CITGO never intended to honor its representations and promises to pay Teknik for its services. Instead, CITGO has manufactured excuses at every turn to avoid paying Teknik what it is rightfully owed.

95.     In this case, Teknik sues CITGO for fraud in the inducement, breach of contract, negligent misrepresentation, unjust enrichment, and quantum meruit.

## THE PARTIES

96.     Counter-Plaintiff Teknik is a Florida limited liability company that maintains its principal place of business in Miami, Florida, and carries out its core executive and administrative functions in Miami.

97.    Teknik is a subsidiary of Rincon Family Holdings, LLC ("RFH"). The members of RFH are AC Rincon, LLC, HA Rincon, LLC, LALF Rincon, LLC, LALO Rincon, LLC, and HS Rincon, LLC.

98.    The member of AC Rincon, LLC is Ana C. Rincon. Ana C. Rincon is a citizen of the state of Florida and resides in Broward County, Florida.

99.    The member of HA Rincon, LLC is Holly A. Rincon. Holly A. Rincon is a citizen of the state of Florida and resides in Miami-Dade County, Florida.

100.    The member of LALF Rincon, LLC is Luis Alfredo Rincon. Luis Alfredo Rincon is a citizen of the state of Florida and resides in Miami-Dade County, Florida.

101.    The member of LALO Rincon, LLC is Luis Alonso Rincon. Luis Alonso Rincon is a citizen of the state of Florida and resides in Miami-Dade County, Florida.

102.    The member of HS Rincon, LLC is Holly Susana Rincon. Holly Susana Rincon is a citizen of the state of Florida and resides in Marion County, Florida.

103.    Upon information and belief, Counter-Defendant CITGO is a Delaware corporation with its principal place of business in Houston, Texas.

104.    Upon information and belief, CITGO is a wholly owned subsidiary of CITGO Holding, Inc., which is a wholly owned subsidiary of PDV Holding, Inc., which in turn is a wholly owned subsidiary of PdVSA, which is the state-owned petroleum corporation of the Bolivarian Republic of Venezuela.

## JURISDICTION AND VENUE

105.    This Court has personal jurisdiction over CITGO as it expressly consented to such jurisdiction in the Agreements (as defined below). *See* Exhibit A at p. 3 ¶ 19.

Further, this Court has personal jurisdiction over CITGO as a substantial part of the events giving rise to the claims against it occurred in this jurisdiction.

106.    This Court has subject matter diversity jurisdiction over this action under 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship.

107.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events establishing the claims occurred here, and Defendants expressly consented to such venue in the Agreements. *See id.*

108.    All conditions precedent to the initiation of this claim have been performed, waived, or otherwise satisfied.

109.    Teknik has been required to retain the services Greenberg Traurig, LLP and Perlman, Bajandas, Yevoli & Albright, P.L. to enforce its rights under the Agreements and prosecute this action and seeks an award of costs associated with enforcing this action, including without limitation, all reasonable attorneys' fees, costs, and expenses.

## GENERAL ALLEGATIONS

110.    Teknik is a United States-based company that provides procurement and logistics services to the energy industry and manufacturers. In May 2010, CITGO engaged Teknik to provide logistics services.

111.    To this end, CITGO and Teknik entered into a written Commercial Agreement dated May 5, 2010; an Amendment to Commercial Agreement dated April 8, 2013; a Change Order Form dated June 1, 2017; a Change Order Form dated August 3, 2017; a Change Order Form dated November 30, 2017; and an Amendment to Commercial

Agreement dated January 2, 2019, Commercial Agreement. The foregoing Commercial Agreement, Change Orders and Amendments are included in the "Agreements" attached hereto as <u>Exhibit A</u> and are incorporated herein.

112.    Under the Agreements, CITGO purchased millions of dollars' worth of goods, and Teknik performed various logistics services to deliver the goods to PdVSA— the state-owned petroleum corporation of the Bolivarian Republic of Venezuela—at specified delivery points. <u>Exhibit A</u> at p. 2 ¶ 1. The Agreements do not provide terms and conditions related to the indefinite storage and warehousing of the goods.

113.    On January 28, 2019, however, pursuant to Executive Order 13850 (the "Order"), OFAC added PdVSA to its List of Specifically Designated Nationals and Blocked Persons List. The effect of this designation is that all of PdVSA's property is considered blocked as a matter of United States law, and no United States person may engage in any transaction or dealing involving such property without a license from OFAC. Thus, the goods in Teknik's possession were suddenly halted.

114.    Since the Order, Teknik has been forced to act as a warehouse facility for the goods despite never representing itself as having the ability or capacity to hold the goods indefinitely. The goods continue to remain at Teknik's facilities in Houston and Miami.

115.    Before the Order, Teknik never billed CITGO for warehousing and storage costs related to the goods.

116.    In February 2019, Daniel Beuses, the General Manager of Procurement for CITGO, requested that Teknik send its cost structure for warehousing and storing the

goods. In response, on March 4, 2019, an employee of Teknik e-mailed CITGO and stated

the following:

> For the past year we have been warehousing goods in our facilities, but Citgo shipments and business has pretty much been at a standstill for the past 9 months. We have been incurring the warehousing expense, insurance expenses, etc. but we have not been able to offset these expenses simply because there are no shipments. We never designed the business to warehouse goods at our facilities because the business was designed to ship goods not warehouse them, but looking at the fact that there are no shipments, we need to begin to bill for said services.
>
> The rates we have for warehousing fees are set at either $0.03 per Lbs. or $0.75 per cuft. Whichever is greater. Looking at the amount of cargo you have in our warehouses it would seem that the expense if calculated by weight would be $54,066.90 or if calculated by Cuft. It would be $64,600.24. In order to reduce the impact, we would be willing to provide a 25% discount on the rate of the higher amount ($54,066.90 -$16,150 = $48,450.24 per month), but the expense would need to be from the time of the last shipment we shipped for Citgo which was back in September 2018.
>
> Therefore our proposal would be to bill Citgo $290,701.44 for Sept. 2018 thru Feb. 2019. And then $48,450.24 monthly until shipments can begin once again.
>
> When speaking to you last week, I was not aware that we had so much cargo in our warehouses waiting to be shipped and had to ask my team to create a report that would substantiate the storage values and amounts. Just to give you an idea the amount stored in our warehouse is equivalent to 70 to 80 containers. Please indicate if you feel our proposal is reasonable and if you have any questions, please do not hesitate to call me.

A copy of this e-mail is attached hereto and incorporated herein as Exhibit B.

117.   CITGO never responded to the above e-mail. In fact, Teknik attempted to

contact CITGO by telephone and e-mail multiple times to confirm the cost structure for

warehousing and storing the goods, but CITGO ignored all of Teknik's requests for acknowledgement.

118. Finally, on March 27, 2019, Daniel Beuses e-mailed employees of Teknik, stating that

> Should you wish to transact in the Property moving forward, ***including any attempts to liquidate the property to pay handling or storage fees***, Section 1(b) of Executive Order 13850 requires that OFAC issue a general or specific license authorizing the specific transaction before the transaction occurs. ***CITGO would fully support a request by Teknik to OFAC to issue a license permitting the liquidation of the Property in order to cover Teknik's handling or storage fees***. We are prepared to cooperate with you in good faith efforts to seek such relief from OFAC, to the extent the requested relief complies with our existing agreements.

(emphasis added). *See* Exhibit B.

119. The above statements were false and CITGO only presented them to induce Teknik to spend time, money, and resources on obtaining a license that CITGO never believed Teknik would actually receive.

120. When it made these representations in the e-mail, CITGO did not intend to cover Teknik's handling or storage fees or to allow liquidation of the goods to cover such fees. In reality, CITGO intended to use the Order as an opportunity to manufacture issues related to the goods in order to avoid ever having to make payment under the Agreements.

121. CITGO intentionally omitted that it was not going to cover, pay or reimburse the costs and expenses of Teknik's handling or storage of the goods, or allow liquidation of the goods to cover such costs. CITGO's statements that it would cover, pay or reimburse the costs and expenses of Teknik's handling or storage of the goods, or allow liquidation of the goods to cover such costs, including the statements in the March 27, 2019 e-mail,

and the foregoing omissions referenced in this paragraph are hereinafter referred to as the "Misrepresentations and Omissions."

122.   On February 18, 2021, in reliance on CITGO's Misrepresentations and Omissions, Teknik obtained a license from OFAC authorizing it to collect all of its outstanding storage fees from CITGO. The license authorizes collection of specifically $2,056,261.95 that had accrued up until the date Teknik requested the license, and then an additional $70,103.07 per month for each month since that date. The license also indicates that Teknik is able to dispose of the goods to end its liabilities. A copy of the license is attached hereto and incorporated herein as Exhibit C.

123.   In accordance with the Agreements, and to collect payment owed, Teknik provided CITGO with a detailed summary of its costs and expenditures together with sufficient supporting documentation evidencing payment of its expenditures. It also offered CITGO the opportunity to conduct a commercially reasonable physical inspection of the goods.

124.   In response, CITGO has made every effort to avoid paying Teknik the costs of storing and handling the goods after CITGO had agreed and represented it would do so. In this regard, CITGO has made the following unsubstantiated claims: (1) CITGO claims that the cost estimates Teknik provided CITGO for a physical inspection of the goods are "commercially unreasonable" without explaining the basis for its position or offering an alternative; (2) CITGO claims Teknik refuses to allow CITGO to take storage of the goods, but CITGO has never offered any form of adequate security as a substitute for the goods,

which Teknik is entitled to by law in order to ensure its financial interests are protected[1];

and (3) CITGO claims Teknik prevents CITGO's ability to inspect the goods, but Parties

already held no-cost walk-through inspections at Teknik's Houston facility and Miami

facility on July 6, 2021 and July 27, 2021, respectively; and Teknik agreed to halt the

auction process through August 24, 2021 so CITGO could obtain competitive bids from

third parties in order to conduct a broad physical inspection of the goods.

125.    Despite Teknik's reliance on CITGO's Misrepresentations and Omissions,

CITGO's actions show it has no intention of covering Teknik's handling and storage fees,

or permitting liquidation of the goods to cover the costs. Now, Teknik seeks to auction the

goods, as permitted under its OFAC license, in order to stop the bleeding of its accruing

storage and handling costs.

126.    All conditions precedent to the prosecution of this action have been

performed, satisfied, excused or waived.

127.    Teknik has been required to retain the services Greenberg Traurig, LLP and

Perlman, Bajandas, Yevoli & Albright, P.L. to enforce its rights under the Agreements and

prosecute this action and seeks an award of costs associated with enforcing this action,

including without limitation, all reasonable attorneys' fees, costs, and expenses.

---

[1.] *See BP Expl. & Oil Co. v. 1146 Joints*, CIVIL ACTION NO. 95-2355 SECTION "R", 1995 U.S. Dist. LEXIS 10609, at *6 (E.D. La. July 24, 1995) (affirming prior order to release cargo in favor of the company that offered adequate security as a substitute, and explaining "courts have consistently recognized that an offer of adequate security provides a sufficient substitute for cargo").

## COUNT I: FRAUD IN THE INDUCEMENT

128.    Teknik repeats and realleges the factual allegations contained in paragraphs 1-36 as though fully set forth herein.

129.    CITGO knowingly (i) made false or misleading statements of material facts to Teknik, (ii) concealed and omitted material information from Solace, and (iii) made false promises of future conduct.

130.    This includes but is not limited to the Misrepresentations and Omissions set forth in paragraph 22 and 26, *supra*.

131.    At the time CITGO made the Misrepresentations and Omissions, it knew they were false and misleading. CITGO intended to induce Teknik to rely and act on the Misrepresentations and Omissions by Teknik applying for a license, while CITGO knew full-well that it had no intent, desire or capability of performing its stated responsibilities and obligations once Teknik obtained a license.

132.    Teknik did, in fact, detrimentally rely upon these Misrepresentations and Omissions. The Misrepresentations and Omissions induced Teknik (i) to spend capital expenditures and resources to obtain an OFAC license; (ii) to defer and/or lose other business opportunities in the industry, thereby materially affecting Teknik's position in the overall market; and (iii) necessarily incur legal fees, costs, and other expenses in connection with requesting OFAC's cooperation and obtaining the OFAC license.

133.    Teknik's reliance was reasonable and justified. Teknik would not have conducted due diligence and investigation into obtaining a license, deferred and/or lost

other market opportunities, or incurred significant fees, costs and expenses, but for CITGO's Misrepresentations and Omissions.

134.    The subject matter of the Misrepresentations and Omissions includes Teknik's right to auction the goods after receiving CITGO's consent to do so on March 27, 2019, and the costs and expenses of Teknik's indefinite handling or storage of the goods—neither of which are addressed within the Agreements.

135.    As a direct and proximate result of the above and foregoing, Teknik has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

136.    The conduct and actions of CITGO, as alleged above were fraudulent, willful, wanton, intention, oppressive, and malicious, and thereby entitle Teknik to punitive damages in an amount to be proven at trial, in an amount constitutionally permissible.

## COUNT II: NEGLIGENT MISREPRESENTATION

137.    Teknik repeats and realleges the factual allegations contained in paragraphs 92-136 as though fully set forth herein.

138.    CITGO knowingly made the Misrepresentations and Omissions set forth in paragraph 22, *supra*.

139.    In the exceedingly unlikely event that CITGO did not actually know the Misrepresentations and Omissions were false and/or misleading when they were made, it should have known the Misrepresentations and Omissions were false and/or misleading

when made, and had no reasonable grounds for believing the Misrepresentations and Omissions were true and not misleading when made.

140.    CITGO intended to induce Teknik to rely and act on the Misrepresentations and Omissions by Teknik applying for a license, while CITGO knew full-well that it had no intent, desire or capability of performing its stated responsibilities and obligations once Teknik obtained a license.

141.    Teknik did, in fact, detrimentally rely upon these Misrepresentations and Omissions. The Misrepresentations and Omissions induced Teknik (i) to spend capital expenditures and resources to obtain an OFAC license; (ii) to defer and/or lose other business opportunities in the industry, thereby materially affecting Teknik's position in the overall market; and (iii) to necessarily incur legal fees, costs, and other expenses in connection with requesting OFAC's cooperation and obtaining the OFAC license.

142.    Teknik's reliance was reasonable and justified. Teknik would not have conducted due diligence and investigation into obtaining a license, deferred and/or lost other market opportunities, or incurred significant fees, costs and expenses, but for CITGO's Misrepresentations and Omissions.

143.    As a direct and proximate result of the above and foregoing, Teknik has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## COUNT III: BREACH OF CONTRACT (THE AGREEMENTS)

144.    Teknik repeats and realleges the factual allegations contained in paragraphs 92-143 as though fully set forth herein.

145.    Teknik entered into the Agreements with CITGO.

146.    Teknik did all, or substantially all, of the significant things that the Agreements required it to do, including providing CITGO with the documents necessary to substantiate the storage and handling related costs that Teknik incurred while storing the goods.

147.    However, since Teknik obtained its OFAC license in February 2021, CITGO has manufactured issues at every turn in order to avoid making payment to Teknik that are required under the Agreements, including reimbursement fees, costs and expenses. Thus, CITGO has breached its obligation to "reimburse Teknik within 5 business days after Teknik provides CITGO with supporting documentation." See Exhibit A at p. 3 ¶ 5.

148.    The subject matter of the foregoing breach of the Agreements is separate and distinct from the Misrepresentations and Omissions because the Agreements cover costs related to logistics services that Teknik provided when delivering the goods to their intended destination. On the other hand, the Agreements do not cover the subject matter of the Misrepresentations and Omissions, which includes Teknik's right to auction the goods after receiving CITGO's consent to do so on March 27, 2019, and the costs and expenses related to Teknik's indefinite handling or storage of the goods.

149.    To date, no payment has been received and costs continue to accrue for Teknik.

150.    As a result of the above and foregoing, CITGO is in an unremedied material breach of the terms and conditions of the Agreements.

151.    As a direct and proximate result of the above and foregoing, Teknik has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## COUNT IV: UNJUST ENRICHMENT

152.    Teknik repeats and realleges the factual allegations contained in paragraphs 92-151 as though fully set forth herein.

153.    Teknik conferred a benefit upon CITGO by, after OFAC added PdVSA to its List of Specifically Designated Nationals and Blocked Persons List pursuant to Executive Order 13850, handling and storing the goods for an indefinite period of time, which is still ongoing.

154.    CITGO has appreciated the benefit and has accepted and retained the benefit of Teknik's storage and handling of the goods.

155.    CITGO had actual knowledge that the handling and storage of the goods provided by Teknik was not a gift and that Teknik expected to be properly compensated once it received permission from OFAC to move the goods.

156.    CITGO retaining the benefit of having the goods stored by Teknik for free under the circumstances described above would be inequitable and unjust.

157.    Thus, CITGO has been unjustly enriched by failing to repay Teknik for the costs, fees and/or expenses associated with handling storing the goods.

158.    As a direct and proximate result of the above and foregoing, Teknik has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## COUNT V: QUANTUM MERUIT

159.    Teknik repeats and realleges the factual allegations contained in paragraphs 92-158 as though fully set forth herein.

160.    Teknik provided storage services to CITGO by, after OFAC added PdVSA to its List of Specifically Designated Nationals and Blocked Persons List pursuant to Executive Order 13850, handling and storing the goods for an indefinite period of time, which is still ongoing.

161.    CITGO received and accepted a benefit of Teknik's storage and handling of the goods, under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it.

162.    CITGO has failed to pay Teknik for the storage services rendered and costs incurred by Teknik in its handling and storing the goods for an indefinite period of time.

163.    Teknik did not intend to bestow such services upon CITGO as a gift and understood at all times that CITGO would make full payments for storage services rendered and costs incurred by Teknik for and on behalf of CITGO.

164.    Teknik is entitled to receive compensation for its services.

165.    This claim is plead in the alternative; if Teknik's claims are unsuccessful, Teknik has no adequate remedy at law and it would be inequitable for CITGO to retain the

benefits of Teknik's storage services rendered and costs incurred without having to pay the reasonable value thereof.

166.    As a direct and proximate result of the above and foregoing, Teknik has suffered and will continue to suffer damages in an amount to be proven at trial with said amount being in excess of the jurisdictional limit of seventy-five thousand dollars ($75,000).

## PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiff requests this Court enter judgment:

1.    in favor of Counter-Plaintiff against Counter-Defendant on all counts;

2.    awarding Counter-Plaintiff actual and compensatory damages in an amount to be proven at trial;

3.    awarding Counter-Plaintiff punitive and exemplary damages, according to proof at trial, in an amount constitutionally permitted;

4.    awarding Counter-Plaintiff attorneys' fees;

5.    awarding Counter-Plaintiff costs of suit incurred herein; and

6.    such other and further relief as the Court deems just and proper.

Dated this 3rd day of August, 2021.

Respectfully submitted,

GREENBERG TRAURIG, LLP


*/s/ C. Mark Stratton*
C. Mark Stratton, Attorney-in-Charge
Southern District Bar No. 12144
Texas Bar No. 19359200
E-mail: strattonm@gtlaw.com
Gregory J. Casas
Southern District Bar No. 16836
Texas Bar No. 00787213
E-mail: casasg@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

PERLMAN, BAJANDAS, YEVOLI,
& ALBRIGHT, PL
*/s/ Paul D. Turner*
Paul D. Turner, Esq.
Florida Bar No. 121690
*Pro Hac Vice Approved*
Benjamin L. Reiss, Esq.
Florida Bar No. 121690
*Pro Hac Vice Approved*
Nima Tahmassebi, Esq.
Florida Bar No. 121690
*Pro Hac Vice Approved*
283 Catalonia Avenue, Suite 200
Coral Gables, Florida 33134
Telephone: (305) 377-0086
Facsimile: (305) 377-0781

*Attorneys for Teknik Trading, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served this 3rd day of August, 2021, with a copy of the above-document via the Court's CM/ECF System.

       /s/ *C. Mark Stratton*
       C. Mark Stratton