**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

CITGO PETROLEUM CORPORATION,    §
                                §
           Plaintiff,           §
                                §
      v.                        §      Case No. 4:21-cv-02086
                                §
TEKNIK TRADING, LLC,            §
                                §
                                §
           Defendant.           §
                                §

## MOTION TO COMPEL TESTIMONY OF NON-PARTY WITNESS

Juan Carlos Castillo has pled guilty to conspiracy to violate the FCPA as it relates to bribe payments to CITGO's parent company, PdVSA. Mr. Castillo has been sentenced. He has served his jail time. His criminal proceedings are effectively behind him. Most notably, he waived his Fifth Amendment rights when he detailed his conduct in his guilty plea and in detailed testimony in his 2016 bankruptcy proceedings. He cannot now credibly invoke the Fifth Amendment to avoid testifying. Pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's Order dated February 23, 2023 [Dkt. 76], Plaintiff CITGO Petroleum Corporation ("CITGO") asks the Court to compel non-party witness Juan Carlos Castillo Rincon ("Castillo") to testify regarding certain activities related to the underlying action between CITGO and Teknik Trading, LLC ("Teknik").

## I. Introduction

The question for the Court is whether Mr. Castillo can be compelled to testify regarding his activities in a bribery scheme—a scheme for which he pled guilty and has been sentenced— that relates to payments between CITGO and Teknik under the parties' Agreement. Mr. Castillo pled guilty to bribing government officials in exchange for beneficial contracts for his employer,

Clover International. Clover International passed those inflated costs to its sister company and alter ego Teknik. Teknik then sought—and in many instances received—reimbursement from CITGO. CITGO seeks an offset against damages alleged by Teknik as a result of any payments that were unduly paid as a result of Mr. Castillo's bribery scheme. *See* CITGO's Amended Answer [Dkt. 69] ¶ 222. When CITGO has inquired about the bribery scheme, Clover International's charges, and other related issues, Teknik has consistently relied on the attorney-client privilege and alleged that witnesses have no knowledge of the scheme.[1] At this stage, CITGO's only option is to seek clarity from Mr. Castillo directly. Mr. Castillo's sole defense is invocation of the Fifth Amendment, which is inapplicable here.

## II. Background

In 2010, CITGO engaged Teknik to provide services related to the procurement of goods for delivery to CITGO's ultimate parent entity PdVSA. Complaint [Dkt. 1] ¶ 18.  Teknik, for its part, used the services of its "affiliates," Clover International, LLC in Houston; Clover Systems, LLC in Miami; and Clover Internacional, CA in Venezuela  (collectively, "Clover") to actually handle, insure, store, and deliver the goods. **Exhibit 1** is a prepared demonstrative to outline the general structure of the arrangement. CITGO filed suit in June 2021 in order to stop Teknik from improperly auctioning goods that were destined for PdVSA and became halted as a result of U.S. sanctions prohibiting certain activities involving Venezuela. Complaint [Dkt. 1] ¶ 1.

Teknik, Clover International and Clover Systems are each wholly owned by Rincon Family Holdings, which is wholly owned and controlled by the same five siblings: (i) Luis Alonso Rincon; (ii) Luis Alfredo Rincon; (iii) Luis Angel Rincon; (iv) Holly Ana Rincon; and (v) Ana Cristina

---

[1] In fact, Teknik filed a Motion to Strike CITGO's fraud allegations on the basis that CITGO has not alleged sufficient facts. *See* Motion to Strike [Dkt. 79]. The facts sought in *this* deposition are one of the primary sources for the information in question.

Rincon.[2] CITGO believes that Clover Internacional, CA in Venezuela is owned by the same individuals, but the Rincon siblings have suggested (despite holding interests themselves) that they have no knowledge as to who owns Clover Internacional, CA.[3]

From 2010 until Venezuelan sanctions were issued in 2019, Teknik continued to award work to Clover entities and seek reimbursement from CITGO for Clover's services. On August 29, 2018, Mr. Castillo pled guilty to bribing PdVSA officials beginning in 2011 and continuing through at least 2013. Mr. Castillo's signed guilty plea is attached hereto as **Exhibit 2**. During the relevant time period, Mr. Castillo served as the General Manager of Clover International, LLC in Houston. **Exhibit 3** sets forth the contemporaneous organization chart for Clover International, LLC. When indicted, the Government suggested Mr. Castillo acted in concert with an individual who "owned and controlled" Clover International, LLC and was also related to Mr. Castillo; this description fits each of the Rincon family members. **Ex. 4**, Indictment ¶ 6.

Mr. Castillo's guilty plea sets forth the following facts related to this matter and that will form the basis for many of CITGO's deposition questions:

> 1. Mr. Castillo "was not authorized to offer bribe payments of his own initiative" and made payments at the approval of an individual that "owned and controlled [Clover] and its affiliated companies." **Ex. 2**, Plea Agreement p. 13.
>
> 2. "In exchange for the bribes," Clover received "inside information concerning PDVSA contracts;" assistance "obtaining PDVSA contracts, contract extensions, and favorable contract terms—specifically an 'in/out' provision by which [Clover] received additional payments from PDVSA based on the volume of goods it shipped;" and support "in internal PDVSA meetings regarding purchasing decisions." **Ex. 2**, Plea Agreement p. 13.

---

[2] *See, e.g.,* **Ex. 5**, Deposition of Holly Ana Rincon, at 73:11-23 (                    ).

[3] CITGO's Request for Admissions asked about the ownership of Clover Internacional, C.A. and Teknik responded "[N]either Teknik nor its principal [Luis Alonso Rincon] has any involvement with any company called Clover Internacional, C.A." **Ex. 6**, Teknik's Responses to CITGO's Second Requests for Admission, Request No. 95. But when asked about whether he has an ownership interest in Clover Internacional, C.A., Luis Alonso Rincon said "            " **Ex. 7**, February 14, 2023 Deposition of Luis Alonso Rincon, at 136:24-137:1.

3. Mr. Castillo paid the PdVSA official a "monthly payment" *in addition to* an "additional amount … based on the volume they give us," which is a reference to the in/out contract provision. **Ex. 2**, Plea Agreement p. 15.

4. Mr. Castillo "offered and paid bribes to other PDVSA officials in exchange for their assistance in providing improper advantages and helping [Clover], and [Clover's] affiliated companies, obtain and retain business with PDVSA." **Ex. 2**, Plea Agreement p. 16.

5. Mr. Castillo engaged in financial transactions to conceal the proceeds. Mr. Castillo provided "an invoice format for false invoices to be submitted to [Clover] for services that [Clover] did not receive as a means to conceal bribe payments." **Ex. 2**, Plea Agreement p. 14.

6. Mr. Castillo—and an owner of Clover and Clover-affiliated companies—opened offshore bank accounts through which Mr. Castillo paid bribes *and* received commissions from Clover, "which were linked to the bribery conspiracy." **Ex. 2**, Plea Agreement pp. 13, 16.

7. Mr. Castillo, through Clover, paid a specific PdVSA official more than $250,000 in bribes. **Ex. 2**, Plea Agreement p. 15.

8. Mr. Castillo "received at least $1.5 million, but not more than $9.5 million" as a result of his role in the bribery. **Ex. 2**, Plea Agreement p. 16.

These facts are uniquely relevant to the case because Teknik simply passed along Clover expenses to CITGO without validation of the underlying costs. **Ex. 7**, February 15, 2023 Deposition of Luis Alonso Rincon, at 427:20-429:6 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *see also id.* at 430:20-431:21 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

Indeed, these improper charges are critical to CITGO's defenses in two distinct ways: (i) as a result of *years* of improper charges, Clover—through Teknik—reaped millions of dollars in

undue benefits; and (ii) even today, Teknik is seeking "reimbursement" for the in/out charges that were the result of bribery. **Exhibit 8** (Invoice INTT5765), attached hereto, is an example of a currently pending invoice from Teknik wherein Teknik seeks the payment of $154,522.56 that relates to $98,122.56 of "IN & OUT" charges from Clover, $30,550 of "DRAYAGE" charges from Clover, and $25,850 of "LOADING CHARGES" from Clover.

It is—or at least should be—uncontroverted that Clover is not entitled to payment for services and fees that were awarded as a result of bribery. And Teknik, both as the alter ego of Clover and as the contractual party with CITGO, is similarly not entitled to reimbursement from CITGO simply because the Rincon family claims that one of their companies paid another of their companies for those fraudulent expenses.[4] Mr. Castillo's testimony will shed light on these subjects.

Specifically, CITGO anticipates that Mr. Castillo will be able to testify to key documents that demonstrate Teknik is owed nothing in this suit:[5]

> **Exhibit 9** is an email in which Roberto Molina at Clover Internacional requests Mr. Castillo and Mr. Castillo's brother (the current president of Clover International, Juan Luis Castillo Rincon) provide reimbursement for a $███████ bribe payment that was made through a single purpose entity named ███████ The attachment to the email is a WhatsApp screenshot between Mr. Castillo and Roberto Molina in which Mr. Castillo represents that Luis Angel Rincon (current co-owner of Teknik and each Clover entity and brother of the current directors of Teknik and Clover Systems) instructed the $██████ bribe payment related to CITGO work and a similar bribe payment that had been paid previously.

---

[4] If Clover and Teknik were actually "arms-length" companies, Teknik would have filed a third-party complaint against Clover seeking recovery of and indemnity for improperly paid amounts. But because profits from Teknik and Clover fall to the same pockets, Teknik has not done so and CITGO is left with its contractual claim against Teknik, who claims to have no knowledge about the wrongdoing of Clover. *See, e.g.*, **Ex. 6**, Teknik's Responses to CITGO's Second Requests for Admission (Teknik consistently states that the "principal of Teknik" cannot speak to the Clover issues given his lack of "involvement.").

[5] Attached as **Exhibit 10** is a prepared demonstrative to aid in the visualization of the Rincon Family Holdings organization chart.

**Exhibit 11** is an email in which Roberto Molina at Clover Internacional on ████████████ confirms to Luis Angel Rincon and Mr. Castillo that the $████ bribe payment was approved.

**Exhibit 12** is an invoice from Clover Systems to Teknik dated April 5, 2015 that seeks $265,762.31 from Teknik, including $10,716.23 in "in/out" expenses, along with more than $30,000 in other handling charges. This is an example of a request for an "in/out" charge that was permitted as a result of Mr. Castillo's bribery scheme.

**Exhibit 13** is an example of a $████ wire payment made on or about ████████████ from Clover International (in Houston) to Clover Internacional (in Venezuela) as a result of a bribe payment Clover Internacional made related to the CITGO account.

**Exhibit 14** is an invoice from Teknik to CITGO dated ████████ that seeks $████ from CITGO, of which $████ is a ██ commission for Teknik and the remaining $████ is related to Clover fees. This is an example of the scheme by which Teknik would seek reimbursement from CITGO for Clover services.

**Exhibit 15** is a wire transfer request form from Clover International authorizing an $████ payment to a relative of a PdVSA official and authorized by Juan Luis Castillo Rincon, the current president of Clover International. Juan Luis Castillo Rincon continues to serve as the president of Clover International at the direction of the Rincon family.

**Exhibit 16** is an offshore bank account application signed by Mr. Castillo and Luis Angel Rincon (current owner of Teknik and Clover).

CITGO is entitled to ask about these documents and Mr. Castillo cannot stand behind the Fifth Amendment to avoid testifying on these topics. Specifically, Mr. Castillo does not face further incrimination on these subjects because Mr. Castillo has waived his Fifth Amendment right on these subjects.

CITGO has tried a number of other avenues to get access to this information. First, CITGO has asked the owners of Clover and Teknik: the Rincon family. There are just five Rincon siblings behind the two companies: (i) Luis Alonso; (ii) Holly Ana; (iii) Luis Angel; (iv) Luis Alfredo; and (v) Ana Cristina. To CITGO's knowledge, Ana Cristina has never had material involvement in the

companies and Luis Alfredo has not been materially involved in the last 15 years. Although Luis Angel was likely involved in the bribery scheme as set forth in the above-referenced documents, and although he remains a current owner of Teknik and Clover, he is in Venezuela and outside of subpoena power. The two remaining siblings are the active directors of Teknik and Clover Systems. When CITGO asked Luis Alonso—a current owner of every Clover entity—whether Clover ever shared with him the findings of an investigation into Mr. Castillo's actions, Luis Alonso responded: "█████████████?" **Ex. 7**, February 15, 2023 Deposition of Luis Alonso Rincon, at 495:18. When CITGO asked Holly Ana (the current director of Clover Systems, the former director of Clover International (in Houston), Clover Internacional (in Venezuela), and Teknik, and current owner of Teknik and each Clover entity) about the investigation into Mr. Castillo, she said ███████████████████████████████████████

██████████████████████████████████ **Ex. 5**, Deposition of Holly Ana Rincon, at 147:14-19.

Second, Teknik's counsel has taken the position that the plea agreement is *not* an admission to the truthfulness of the facts stated therein. During the re-direct examination of Luis Alonso Rincon, Teknik's counsel asked Luis Alonso Rincon ██████████████████████████

██████████████████████████████████████

█████████████ **Ex. 7**, February 15, 2023 Deposition of Luis Alonso Rincon, at 696:1-6. And during the deposition of Jennifer Martinez of Teknik, CITGO's counsel represented to Ms. Martinez that the plea agreement served as Mr. Castillo's admission as to the veracity of the facts alleged, and Teknik's counsel once again objected, arguing the representation was not correct. **Ex. 17**, Deposition of Jennifer Martinez, at 65:24-68:1. To date, Teknik has refused to let CITGO even represent that Mr. Castillo believes what is set forth in the plea agreement.

Third, Teknik has argued that CITGO has failed to establish its affirmative defenses of fraud and fraudulent inducement. Indeed, pending before the Court is Teknik's Motion to Strike, wherein Teknik argues that CITGO has not set forth the "who, what, when, and where" of the fraud claim. *See* Motion to Strike [Dkt. 79]. The who, what, when, and where are all set forth in Mr. Castillo's plea agreement. Teknik cannot refuse to provide *any* relevant information about Mr. Castillo's conduct while arguing CITGO's allegations are insufficient.

For these reasons, CITGO is left with the potential testimony of Mr. Castillo providing additional details surrounding the bribery scheme. As a result of Mr. Castillo's guilty plea and sentencing, Mr. Castillo does not face further incrimination and, in any event, he has waived the Fifth Amendment right.

### III. Argument

The Fifth Amendment does not shield Mr. Castillo from providing testimony for two related, but independent, reasons: (i) Mr. Castillo does not face further incrimination; and (ii) Mr. Castillo has previously waived his Fifth Amendment rights.

#### A. Mr. Castillo Does Not Face Further Incrimination.

"As a general rule, where there can be no further incrimination, there can be no basis for the assertion of the Fifth Amendment." *Vincent T. Garza Contracting Servs., Inc. v. Harlandale I.S.D. Pub. Facilities Corp.*, No. Civ.SA03CA0759-XR, 2004 WL 1921010, at *3 (W.D. Tex. Aug. 26, 2004); *see also Mitchell v. United States*, 526 U.S. 314, 326 (1999) (noting that "where there can be no further incrimination, there is no basis for the assertion of the privilege"). Here, Mr. Castillo faces no further incrimination for two distinct reasons: (i) Mr. Castillo will not face further incrimination due to the principle of double jeopardy; and (ii) the statute of limitations has passed related to Mr. Castillo's conduct.

Generally speaking, in order to avoid double jeopardy, courts evaluate "whether the offense charged in the subsequent prosecution requires proof of a fact which the other does not." *United States v. Deshaw*, 974 F.2d 667, 670 (5th Cir. 1992) (internal quotes omitted). Here, Mr. Castillo pled guilty to "Count One" of his indictment. **Ex. 2**, Plea Agreement p. 12. Count One of the indictment was a violation of 18 U.S.C. § 371, which was a conspiracy to commit an offense or to defraud United States—here, an FCPA violation. *See* **Ex. 4**, Indictment pp. 1, 10. Given that Mr. Castillo has already pled guilty to the facts established in the plea agreement related to the broadest count in the indictment, Mr. Castillo *cannot* be re-tried on those same facts.

And Count One and related crimes are subject to a five year statute of limitations. *See* 18 U.S.C. § 3282. The five-year statute of limitations would begin when Mr. Castillo withdrew from the conspiracy. *See, e.g., Smith v. United States*, 568 U.S. 106, 111 (2013). CITGO intends to ask Mr. Castillo solely about documents that relate to his time at Clover International, which ended in January 2016, well beyond the applicable statute of limitations at the time of this filing.

Moreover, even if Mr. Castillo remained involved in the conspiracy beyond his employment at Clover International, Mr. Castillo was arrested in April 2018. To the extent the Court relies upon this particular argument in a ruling, CITGO proposes that the Court delay the deposition of Mr. Castillo until April 2023—just one more month—so that there could be no doubt as to the applicability of the statute of limitations.

For these reasons, Mr. Castillo does not face further incrimination and there can, therefore, be no basis for a Fifth Amendment defense.

### B. Mr. Castillo Previously Waived His Fifth Amendment Privilege.

Witnesses may voluntarily waive Fifth Amendment rights. *See, e.g.*, *United States v Locke*, 482 F.3d 764, 767 (5th Cir. 2007).  And it is well-settled that "[d]isclosure of a fact waives the

privilege as to details." *Rogers v. United States*, 340 U.S. 367, 373 (1951). Here, Mr. Castillo disclosed significant facts in his guilty plea. Moreover, any remaining privilege was exhausted once he was sentenced. *See, e.g., Birdsong v. State of Texas*, 82 S.W.3d 538, 542-43 (Tex. App.—Austin 2002, no pet.) (citing rules that the right against self-incrimination "may be waived … when the defendant pleads guilty or confesses to the crime for which he is charged"); *see also In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, 762 F. Supp. 2d 942, 962 (S.D. Tex. 2010) (holding that the Fifth Amendment privilege "remains in effect through sentencing").

In addition to discussing these exact issues in his guilty plea, Mr. Castillo previously waived many of these topics during a prior unrelated bankruptcy matter. *See* **Ex. 18**, Excerpts from Findings of Fact. Specifically, the Findings of Fact show that Mr. Castillo offered testimony as it relates to:

- Mr. Castillo receiving a five percent commission as a result of CITGO work; **Ex. 18**, Excerpts from Findings of Fact, 9 n.9.

- Mr. Castillo holds power of attorney on two personal Panamanian accounts in his father's name; **Ex. 18**, Excerpts from Findings of Fact ¶ 35.

- Clover pays employees commissions only in if the employee manages the PdVSA and/or CITGO accounts; **Ex. 18**, Excerpts from Findings of Fact ¶ 33.

- Mr. Castillo received substantial monetary "gifts" from his father's account; **Ex. 18**, Excerpts from Findings of Fact ¶ 88.

Given his prior waiver as to these topics, Mr. Castillo cannot rely upon the Fifth Amendment for purposes of avoiding testifying in this matter.

### C. DOJ Does Not Object to Mr. Castillo Providing Testimony.

CITGO is cognizant of the Department of Justice's interests in ongoing investigations. As a result, CITGO has coordinated with the DOJ and has agreed to *not* ask Mr. Castillo about his communications with DOJ or knowledge learned from DOJ. In particular, CITGO will not ask

what Mr. Castillo learned as a result of DOJ's representations, what he told the DOJ, or anything else related to Mr. Castillo's interactions with DOJ.  Even if not strictly necessary from a legal standpoint, CITGO has no intention of disrupting ongoing investigations.

### IV. Scope of Inquiry and Anticipated Testimony

CITGO anticipates that some of its deposition questions will not raise a Fifth Amendment defense. These questions relate to Mr. Castillo's upbringing, his connections to the Rincon family over time, and his knowledge of company controls between the various Rincon family businesses (if any). Because CITGO does not anticipate a Fifth Amendment defense on these topics, sample questions are not included herein.

For the relevant inquiries where Mr. Castillo raises a Fifth Amendment defense, the Court must consider specific questions and "forecast" whether an answer could incriminate the witness. *In re Ferguson*, 445 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2013, no. pet.). For this reason, CITGO has compiled the following list of sample questions that are associated with specific representations set forth in Mr. Castillo's guilty plea.

> **Topic 1.** Mr. Castillo "was not authorized to offer bribe payments of his own initiative" and made payments at the approval of an individual that "owned and controlled [Clover] and its affiliated companies." **Ex. 2**, Plea Agreement p. 13.

Sample Question 1: Who authorized the payment of bribes?

Sample Question 2: What was the approval process?

Sample Question 3: To your knowledge, who "owned and controlled" Clover International?

Sample Question 4: List entities that you consider "affiliated companies" of Clover International.

> **Topic 2.** "In exchange for the bribes" Clover received "inside information concerning PDVSA contracts;" assistance "obtaining PDVSA contracts, contract extensions, and favorable contract terms—specifically an 'in/out' provision by which [Clover] received additional payments from PDVSA based on the volume of goods it shipped;" and support "in internal PDVSA meetings regarding purchasing decisions." **Ex. 2**, Plea Agreement p. 13.

Sample Question 1: Describe the negotiation process for contracts, contract extensions, and favorable contract terms.

Sample Question 2: What inside information did you receive?

Sample Question 3: Were you involved in conversations in 2013 and/or 2014 that related to the use of other procurement companies (including but not limited to ICTS, Ventex, and PLS) during the procurement process?

Sample Question 4: Did Clover intend to utilize the "in/out" provision when performing work on CITGO's behalf through Teknik?

> **Topic 3.** Mr. Castillo paid the PdVSA official a "monthly payment" *in addition to* an "additional amount … based on the volume they give us" which is a reference to the in/out contract provision. **Ex. 2**, Plea Agreement p. 15.

Sample Question 1: Did you pay the PdVSA official a variable amount based on the amount that Clover received as a result of the in/out provision?

Sample Question 2: In your experience, is the $0.07/pound in & out fee charged by Clover inflated as compared to industry standard fees?

> **Topic 4.** Mr. Castillo "offered and paid bribes to other PDVSA officials in exchange for their assistance in providing improper advantages and helping [Clover], and [Clover's] affiliated companies, obtain and retain business with PDVSA." **Ex. 2**, Plea Agreement p. 16.

Sample Question 1: What are Clover's affiliated companies?

Sample Question 2: What business did Clover's affiliated companies receive?

Sample Question 3: Did your bribes assist in obtaining and retaining business with CITGO?

> **Topic 5.** Mr. Castillo engaged in financial transactions to conceal the proceeds. Mr. Castillo provided "an invoice format for false invoices to be submitted to [Clover] for services that [Clover] did not receive as a means to conceal bribe payments." **Ex. 2**, Plea Agreement p. 14.

Sample Question 1: Are the exhibits included at **Exs. 8, 12, and 14** examples of financial transactions used to conceal bribes?

> **Topic 6.** Mr. Castillo—and an owner of Clover and Clover-affiliated companies— opened offshore bank accounts through which Mr. Castillo paid bribes *and* received commissions from Clover, "which were linked to the bribery conspiracy." **Ex. 2**, Plea Agreement p. 16.

Sample Question 1: Is **Exhibit 16** an example of an offshore bank account that you opened for purposes of paying bribes?

Sample Question 2: Did your commissions include work awarded to Clover by Teknik?

> **Topic 7.** Mr. Castillo, through Clover, paid a specific PdVSA official more than $250,000 in bribes. **Ex. 2**, Plea Agreement p. 15.

Sample Question 1: Describe the conversations you had with the owner of Clover International that led to the bribe payments.

> **Topic 8.** Mr. Castillo "received at least $1.5 million, but not more than $9.5 million" as a result of his role in the bribery. **Ex. 2**, Plea Agreement p. 16.

Sample Question 1: How much did you receive in commission payments between 2010 and 2015?

Sample Question 2: Do you have an understanding as to whether Clover benefited as a result of your bribery payments? If so, how much did Clover benefit?

Sample Question 3: What portion of your work at Clover was on behalf of CITGO through work awarded by Teknik?

Sample Question 4: What portion of your work at Clover was directly with PdVSA?

> **Topic 9.** Commissions and income described in the Findings of Fact.  *See* **Ex. 18**, Excerpts from Findings of Fact.

Sample Question 1: In Footnote 9 of the Findings of Fact, you reference that Clover receives approximately 20% of revenues from business operations with CITGO. Does this include work awarded through Teknik?

Sample Question 2: Did any of the "gifts" from your father's account, as described in Paragraph 84, relate to work performed at Clover?

Sample Question 3: Does the calculation of $1,392,258, as described in Paragraph 88, accurately describe the commissions and bonuses Clover paid to you between 2008 and 2013?

## V. Conclusion

It is uncontroverted that Mr. Castillo used Clover funds to bribe government officials in order to ensure that Clover received additional work and fees. Mr. Castillo pled guilty to and was sentenced on account of these facts to which he testified. As a result, Mr. Castillo cannot now rest behind the Fifth Amendment to prevent testifying in this related civil matter. For the reasons set

forth above, CITGO is entitled to ask Mr. Castillo about the facts underlying his guilty plea and

the commission payments he disclosed in his prior bankruptcy proceedings.


Dated:  March 21, 2023

                                        Respectfully submitted,

                                        */s/ Nicole M. Perry*

                                        Nicole M. Perry
                                        Attorney-In-Charge
                                        S.D. Texas No. 725420
                                        J. Laurens Wilkes
                                        Texas State Bar No. 24053548
                                        S.D. Texas No. 737955
                                        JONES DAY
                                        717 Texas, Suite 3300
                                        Houston, TX  77002.2712
                                        nmperry@jonesday.com
                                        jlwilkes@jonesday.com
                                        Telephone:  +1.832.239.3939
                                        Facsimile:  +1.832.239.3600

                                        Allison L. McQueen, *Pro Hac Vice*
                                        JONES DAY
                                        110 North Wacker Drive, Suite 4800
                                        Chicago, IL  60606
                                        amcqueen@jonesday.com
                                        Telephone:  +1.312.782.3939
                                        Facsimile:  +1.312.782.8585

                                        COUNSEL FOR CITGO PETROLEUM
                                        CORPORATION

- 15 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 21, 2023, a copy of the foregoing a true and correct copy of the foregoing Motion to Compel was filed electronically via the Court's CM/ECF system and was thereby served upon all counsel of record.

*/s/ Nicole M. Perry*
Nicole M. Perry
